Waite v. Port Reading Railway Co.

---

## CEPHAS K. WAITE

### v.

## THE PORT READING RAILWAY COMPANY.

### WILLIAM VAN SICLEN

### v.

## THE PORT READING RAILWAY COMPANY.

1. Where condemnation proceedings are had under the General Railroad law, the condemning company cannot tender and pay into court the amount of the award of the commissioners and enter into possession of the lands sought until the owner shall have had reasonable time to take an appeal from the commissioners' report.

2. What is reasonable time for taking an appeal must depend upon the circumstances of each case.

3. Sixteen days, under the circumstances of the cases considered, is not an unreasonable time for appealing.

Waite v. Port Reading Railway Co.

On orders to show cause why injunction shall not issue to stay entry upon lands.

*Mr. Abraham V. Schenck* and *Mr. Charles L. Corbin,* for the complainants.

*Mr. John R. Emery* and *Mr. Ephraim Cutter,* for the defendant.

THE CHANCELLOR.

These cases stand substantially upon the same footing, although they concern different complainants and entirely distinct properties. They were argued together, and they may properly be disposed of in a single opinion.

The defendant railroad corporation was organized under the General Railroad law (*Rev. p. 925*), and instituted proceedings, under that law, to condemn a right of way over the lands of the complainants. Commissioners were duly appointed, and, in pursuance of their duties, on the 31st day of March, 1891, awarded to the complainant Waite $3,110, for the value of a strip of his land within the defendant's located route in Middlesex county, and the damages which he will suffer in other property by the construction of the proposed railroad, and to the complainant Van Siclen $1,982.50, for a strip of his land within the same route in the same county. Upon the day on which the commissioners' report was filed in the clerk's office of Middlesex county, the amounts of the awards were respectively tendered to the complainants, each of whom refused to accept the sum tendered to him. The next ensuing term of the Middlesex circuit court commenced on the 7th of April, 1891. Upon the day after the circuit opened, no appeal having then been taken by either of the complainants, the sums tendered were paid into court. Eight days later, on April 16th, the complainant Van Siclen filed a petition appealing from the award for his land, and on the following day, April 17th, the complainant also appealed from the award in his case. On the 21st of April the complainants each gave notice to the defendant of their respective appeals. On the

6th of May the defendant entered upon the land of Waite and commenced work upon an embankment which, when completed, will extend the entire length of the strip condemned and be six and seven-tenths feet high and thirty-six feet wide. On the 15th of May, Waite filed his bill to restrain the defendant from completing its embankment and railroad over his land. On the same day (May 15th) the defendant entered upon the land of Van Siclen and commenced to deposit rails and ties upon it. The next day, May 16th, Van Siclen filed his bill to restrain the defendant from constructing its railroad upon his land.

At the time Waite's bill was filed the defendant had partially made its proposed embankment over the strip of land it sought to condemn from him, filling to the depth of five feet and the breadth of seventeen feet for all but thirty feet of the length of the strip.

It is observed in this statement that the only distinction, material at this stage of these suits, between the two cases, lies in the facts that Waite did not file his bill until nine days after the defendant's entry upon his land, while Van Siclen filed his bill upon the day following the entry upon the land owned by him, and that during the delay in commencing Waite's suit, the defendant expended money in building a considerable structure upon his land. It is claimed, in Waite's case, that so long a delay, in view of the fact that during it the defendant was expending large sums of money, raises a special equity for the defendant, in this application, so far as Waite is concerned.

As common to the two cases, the single question presented at the argument was, whether the defendant was entitled by law to possession of the lands in question at the time of its entry upon them.

It is not disputed that the defendant's invasion of the lands is intended to be of that permanent and exclusive character which, in the absence of right in it to enter and possess them, justifies the interposition of this court by injunction in behalf of the complainant.

By the constitutional interdict against legislation which may be designed to clothe individuals or private corporations with

power to take private property for public use without just com-- pensation first made to the owners, an owner is guaranteed pos- session of his land from takers for public use until he shall be paid for it.

It is obvious that where the owner of land and a taker for public use can agree upon that which is just compensation, effect can readily be given to this constitutional provision ; but often,. because of the owner's absence or disability, or through misap-- prehension or greed, no agreement can be reached, hence, in in-- terest of public progress and accommodation, there is necessity for a legislative prescription of a legal proceeding by which that which is just compensation in a given case may be determined. And also, many times disability, non-residence or obstinacy render actual payment of such compensation before the taking of land, impossible, and hence there is need for the establishment of an equivalent for such payment.

In the twelfth and thirteenth sections of the act under which the defendant is organized such necessary proceeding and equiva- lent are prescribed.

Where the owner of land and a railroad company organized under that act will not agree, or where an agreement cannot be had between them because of the disability or absence of the owner, commissioners are appointed who, pursuing a defined course, fix the compensation to be made and report their deter- mination in writing. From this report either party in interest may appeal to a court, which, through the instrumentality of a jury, is to re-determine what is just compensation. It is appar- ent, from its scope and language, that the statute has a triple design—*first*, to provide for the correct ascertainment of just compensation ; *second*, to authorize a substituted payment where there can be no actual payment; and, *third*, to expedite the acquirement of right to possession of the lands sought by a con-- demning company. In furtherance of the first of these purposes the commissioners award, and an appeal therefrom are given, and, in furtherance of the second, the actual placing of the compensation determined upon within the reach of the owner is required, and to effect the latter of them it is, in substance, provided that

when the amount of the compensation is determined and put within the control of the owner the company may take possession of the land. Neither railroad company nor land-owner is concluded by the action of the commissioners. Each has the right of appeal, and when appeal is taken the compensation is to be fixed anew by the verdict of a jury. Then, when an appeal shall have been taken, the award by the commissioners ceases to be the "just compensation." It is then no longer the proper sum to tender, and its payment into court will be without legal significance. The result of the appeal determines how much the "just compensation" is, and the sum to be tendered and paid. For this reason there must be delay in taking possession until the appeal shall be determined. Through the necessity for delay, thus made apparent, the appeal operates as *supersedeas* upon the previous proceedings. This, in substance, is the construction put upon the statute in *Johnson* v. *The Baltimore and New York Railway Co., 18 Stew. Eq. 454*, where an appeal was taken before the amount awarded by the commissioners had been paid into court.

The case before me differs from that case, in that here the appeal was taken after a tender and payment into court of the amount of the commissioners' award. Shortly after the payment into court, and before the defendant attempted to take possession of the land, the owner appealed. An important question is here presented, whether, under the circumstances stated, an appeal stays the right of defendant to possession of the land. Or, put in another way, whether the legislature contemplated that after the filing of the commissioners' report possession of the land should be had or lost, according to the activity of the parties concerned in a condemnation proceeding, through an unseemly scramble between the owner and the company to ascertain whether the one can appeal before the other shall be able to tender the amount awarded and pay it into court.

I have already intimated that the legislative scheme was to secure the right of appeal and at the same time expedite the condemning company in obtaining possession of the land. The intent manifestly was to permit the company to take possession

Waite v. Port Reading Railway Co.

of the land with reasonable expedition, but not so immediately as to defeat the owner from availing himself of the stay which appeal will secure for him. The unreported case of *Currie* v. *The Jersey City and Western R. R. Co.*, referred to and followed in *Pomona Branch R. R. Co.* v. *Camden and Amboy R. R. Co.*, *20 Atl. Rep. 350*, presented this question. There the award, payment of its amount into court, taking possession of the land by the company and appeal from the commissioners' report followed each other in quick succession, within a few minutes. Upon being applied to by bill, filed by the owner to restrain the company from constructing its railroad over his land, I adopted the construction of the statute pronounced in *Johnson* v. *Railway Co.*, *supra*, and going further, held that, before possession could be taken after tender and payment into court, a reasonable time must be allowed for taking an appeal. Upon a review of my decision by the court of errors and appeals it was sustained.

What is a reasonable time for taking an appeal must depend upon the circumstances of each case.

I think, under the circumstances of the cases before me, that the appeals here concerned were taken within a reasonable time. A period of only sixteen days elapsed, and that delay does not appear to have been more prejudicial to the defendant than a delay of one or two days would have been. When the appeals were taken the circuit court was yet open, and it was then as much within the power of the defendant to expedite the litigation as it would have been if the appeals had been taken upon the first day of the term. Convincing evidence of its ability to apply to the court lies in the fact that as late as the 25th of May the defendant unsuccessfully moved for the dismissal of the appeals, upon the ground that they should have been taken upon the first day of the term.

The fact that the defendant waited eight days before it paid the amounts of the awards into court does not change the situation. Both the complainants were *sui juris*, and each of them had refused the tender made to him. This mere refusal signified dissatisfaction and probable appeal, and warned the defendant to wait a reasonable time before acting upon the assumption that an

appeal would not be taken. If the payments into court had been made after reasonable notice to the complainants to take their appeals, they might have had force growing out of the inequity of the complainants standing silent and inactive while the expenditure was being made. But there was no such notice. The defendant evidently relied more upon that which it regarded as its legal right than upon that which was due to the spirit of fairness. When it thought that the right to appeal had been lost it paid the awards into court without notice of any kind.

The remaining question relates to the delay in the complainant Waite's application for injunction.

The defendant's entry was in defiance of Waite's appeal, and, according to the uncontradicted affidavit of Mr. Waite, against his remonstrance. It may be that the nine days between the entry and the application to this court was more than ample time to prepare a bill with its verification, but I do not perceive that it so far exceeded reasonable bounds as to raise an equity for the defendant. Waite's appeal, followed by his remonstrance against the defendant's entry, so strongly marked his dissent to the entry that it is impossible from a mere delay of nine days, during which a bill in chancery was in course of preparation, to infer a change in his attitude and an acquiescence in the defendant's acts. The defendant expended its money against remonstrance and warning, and must be held to have done so at its peril. Mr. Waite does not now ask a mandatory injunction for the removal of the embankment. All he seeks is to restrain its completion and the construction of a railroad over his land, and this he is entitled to, until he shall be duly compensated for the land taken.

The orders to show cause will be made absolute.